**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAROLINE RICH, et al., | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 14-2075 (FLW)(DEA) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Defendants. | : | |

WOLFSON, District Judge.

Plaintiffs, Caroline Rich ("Rich"), Marie-Joe Farrior ("Farrior"), and Okey Sibedu ("Sibedu") (collectively, the "Plaintiffs"), filed this Complaint on April 2, 2014, and their Amended Complaint on July 28, 2014, alleging various causes of action for employment discrimination against Plaintiffs' former employer, the State of New Jersey and the New Jersey Department of Children and Families (the "DCF"), as well as certain individual employees of DCF: Mary Browne ("Browne"), Wayne Shrewing ("Shrewing"), and Ila Bhatnagar ("Bhatnagar") (collectively, the "Defendants").

Defendants have moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on numerous grounds. They argue, *inter alia*, that Plaintiffs cannot bring a private cause of action under the Fourteenth Amendment; that they are immune from suit under the NJLA, ADA, and 42 U.S.C. § 1983; that there is no private right of action under 42 U.S.C. § 1981; that Plaintiffs' claims under Title VII and the ADA must be dismissed as against the individual employees; and that certain counts of the Amended Complaint must be dismissed under CEPA's waiver provision. Plaintiffs oppose the motion. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set

forth below, Defendants' motion is granted in part and denied in part.  Counts One, Two, Five,

and Seven will be dismissed in their entirety.  Count Three of the Amended Complaint, alleging

violations of 42 U.S.C. § 1983, will be dismissed as it relates to the State Defendants and the

Individual Defendants in their official capacities only.  Count Four of the Amended Complaint,

alleging violations of Title VII, will be dismissed as to the Individual Defendants.  Plaintiff

Farrior's Title VII claim will be dismissed, with leave to amend to establish the timeliness of her

claim as to the State Defendants.  Further, Defendants' motion to dismiss Rich's Title VII

retaliation claim will be denied.  Finally, Count Six of the Amended Complaint, alleging

violations of the NJLAD, will be dismissed as it relates to the State Defendants and the

Individual Defendants in their official capacities only.

I.      **Background**[1]

        Plaintiffs have brought this action against the Defendants alleging various causes of

action for employment discrimination.  Plaintiffs allege that, while employed by DCF, Rich,

Sibedu, and Farrior were retaliated against by Defendants for volunteering as potential witnesses

for a third-party plaintiff (the "Third-Party Plaintiff") in her suit against the State of New Jersey

and DCF for race discrimination and retaliation (the "Third-Party Action").

        Rich alleges that, after she disclosed that she was going to be a witness for the Third-

Party Plaintiff, she received disciplinary threats and write-ups.  *See* Am. Compl. ¶¶ 15, 17, 27,

31.  After Rich disclosed that she would cooperate as a witness for the Third-Party Plaintiff, she

filed a request for a reasonable accommodation because of a disability and hardship.  *See id.* at ¶

32.  She alleges that her request for reassignment was not honored, and no attempt was made to

---

[1] The following allegations are taken from the Amended Complaint and must be taken as true in deciding this
Motion to Dismiss.  *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) ("We accept all factual allegations as
true, construe the amended complaint in the light most favorable to [the plaintiff], and determine whether, under any
reasonable reading of the…complaint, he may be entitled to relief.").

process the request, because she refused to serve as a witness for the State in the Third-Party Action.  *See id.* at ¶¶ 33, 61.

Plaintiffs further allege that, when out on official sick leave, she was compelled to attend a fitness for duty examination on September 19, 2013, by Bhatnagar, the Director of Employee Relations, even though attendance at a fitness for duty examination by an employee on official sick leave is not customary.  *Id.* at ¶ 35.  Plaintiffs allege that Bhatnagar targeted Rich because Bhatnagar already knew that Rich would be a witness for the Third-Party Plaintiff.  *Id.* at ¶¶ 36, 40.  This allegation is based upon the fact that Third-Party Plaintiff consulted with Bhatnagar while Bhatnagar was attorney in private practice, before becoming the Director of Employee Relations at the DCF.  At Rich's medical evaluation, the doctor asked that Rich be evaluated again in three months.  *Id.* at ¶ 42.  Plaintiffs allege that, on October 9, 2013, Bhatnagar set conditions for Rich's return to work prior to the doctor examining Rich again.  *Id.* at ¶¶ 43–45. Plaintiffs allege that Rich was "bombarded by Ms. Bhatnagar with numerous directives that go beyond the normal execution of routine responsibilities of sending a staff on medical evaluation," and that she pressured Rich to resign or to go to medical examinations while other similarly situated staff members were not pressured to attend multiple medical examinations while on leave.  *Id.* at ¶¶ 46, 64.   After a medical examination in Spring 2014, Rich was found to be unfit for duty by a psychotherapist appointed by the Defendants, and Rich was terminated as a result of that finding.  *Id.* at ¶ 49.

Rich also alleges that she was also given a five-day suspension after she refused to support the State's position in the Third-Party Action.  While the DCF told Rich that she was being suspended for an incident that allegedly happened five months earlier, Rich asserts that was a pretext because the incident had already been resolved through a warning and corrective

employee action.  *See id.* at ¶¶ 51–54.  Rich also states that when she was given the suspension memorandum by Browne, the office manager at the Mercer County office of the DCF, she was told that she should seek another job because she was not cooperating with the DCF.  *Id.* at ¶ 55.

Plaintiffs also assert that Rich was punished with a ten-day pre-hearing suspension order issued by Bhatnagar after Rich, while in court with her family members, showed her belief that the DCF may have violated their rights based on the arguments presented by a public defender on her family's behalf in court.  *See id.* at ¶ 66.  Rich also asserts that this suspension was "calculated to punish Rich for cooperating in the [Third-Party Plaintiff] investigation."  *Id.* at ¶ 67.  Finally, Rich asserts that the DCF started an investigation against Rich in January 2014, claiming that a call was received that her child may have been abused or neglected.  Rich states that this allegation was false, and was investigated and found to be unsubstantiated.  The DCF, however, allegedly left the case open and would not close the case until "persistent complaints and written protests from Rich."  *Id.* at ¶¶ 68–72.

The Amended Complaint also alleges that Plaintiff Sibedu, a native of Nigeria, and Farrior, a Haitian female, were disciplined in extreme ways and subject to harassment by Bhatnagar and Browne after they were listed as witnesses for the Third-Party Plaintiff.  *See id.* at ¶¶ 93, 115.  Both Farrior and Sibedu allege that they were unfairly treated and harassed because of their race and/or national origin.  Plaintiffs allege that Browne made disparaging racial remarks about Sibedu when he was in Nigeria, including that Sibedu "lies like the other Africans who claimed they are sick of [sic] malaria when they travel to Africa when in fact nothing is wrong with them" and that Africans cannot be trusted.  *Id.* at ¶ 77.  Browne also had Sibedu's supervisor call his clients and inquire about his activities, which not only humiliated Sibedu, but ruined his relationship with families and suggested a lack of competency to the families he

served.  *See id.* at ¶¶ 79–81.  Plaintiffs further allege that Browne "constantly mocked Farrior's accent and criticized her way of speaking and writing [sic] sometimes referring to her Haitian heritage as a problem."  *Id.* at ¶ 116.

Another supervisor informed Sibedu that he and Farrior were discussed at a management meeting as a target for termination because of the Third-Party Action.  *Id.* at ¶ 92.  Plaintiffs assert that Bhatnagar aggressively interrogated Sibedu about an infraction—undisclosed in the Amended Complaint—in order to solicit information "so as to gain an unfair advantage against Sibedu and against [the Third-Party Plaintiff]."  *Id.* at ¶¶ 89–90.  Plaintiffs assert that Bhatnagar never took steps to disqualify herself from any involvement with Sibedu or Farrior when she "had full knowledge that a conflict of interest existed" because Sibedu and Farrior were witnesses for the Third-Party Plaintiff.  *Id.* at ¶¶ 88, 118.

Plaintiffs also allege that Sibedu and Farrior were treated differently in the workplace as compared to non-minority coworkers.  Plaintiffs allege that Sibedu was suspended by the Defendants "with intent to terminate him for an offense that did not rise to the level of suspension when it involves White employees."  *Id.* at ¶ 95.  Likewise, Plaintiffs allege that Farrior "was subject to suspension and termination for infraction [sic] that White colleagues would not be punished for."  *Id.* at ¶ 119.  For example, a white female coworker of Plaintiffs admitted to Browne and to Employee Relations at DCF that "she left kids at risk by falsifying an interview of a child named in the allegations of a child abuse and neglect referral that was assigned to Plaintiff Sibedu for investigation."  *Id.* at ¶ 97.  This coworker "was left on the job and afforded the opportunity to continue to work in this hazardous fashion."  *Id.* at ¶ 97.  Browne thereafter conducted an audit for this worker's caseload, which allegedly revealed that there were several other cases in which this coworker "had falsified documentation and left referrals

uninvestigated." *Id.* at ¶ 100.  Plaintiffs also allege that this same coworker "has been out of compliance with the Modified Settlement Agreement on more than one occasion and faced no discipline or termination compared to African American workers, like Farrior who were terminated for infractions" similar to this coworker's misconduct.  *Id.* at ¶ 122.  Plaintiffs allege that this coworker was not terminated or disciplined in the same manner as Sibedu or Farrior were because she is a white female.  Specifically, instead of being "terminated or given a major discipline," *id.* at 122, this coworker only was "progressively punished" with a change of assignment and a forty-five day suspension that she could serve over a six month timeframe.  *Id.* at ¶ 124.  Plaintiffs further allege that Defendants "gave white males the opportunity to give back two (2) of their vacation days and only serve (1) day suspension if they did not exercise their rights to appeal the discipline of a five (5) day suspension," but that "Farrior and African Americans at the Mercer Local office were not afforded this kind of benign disciplinary choices [sic]."  *Id.* at ¶¶ 120, 121.

All three Plaintiffs were subsequently terminated by Defendants.  Plaintiffs all filed complaints with the Equal Employment Opportunity Commission ("EEOC"), but the Amended Complaint states that only Sibedu and Rich have received a Notice-of-Right-to-Sue from the EEOC.  Plaintiffs allege that Farrior's complaint "was not docketed because the EEOC concluded that the complaint was filed more than three hundred day after the acts complained of occurred."  *Id.* at ¶ 12.[2]  Plaintiffs then commenced this action, in which they allege several causes of action for employment discrimination. Specifically, Plaintiffs have alleged: (1) that their equal protection rights under the Fourteenth Amendment were violated when they were subjected to "terms and conditions of employment different from those offered to other similarly

---

[2] As discussed *infra*, despite these allegations, Plaintiffs have submitted a right-to-sue letter issued to Farrior with their opposition brief.  *See* Affirmation of Albert Van-Lare ("Van-Lar Aff.") Ex. 1 (hereinafter the "Right-to-Sue Letter").

situated employees," *id.* at ¶ 135; (2) that Sibedu and Farrior were discriminated "in the work place because of their race" in violation of 42 U.S.C. § 1981; (3) that Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983 when they "discriminated against Plaintiffs because of their race as African-Americans," *id.* at ¶ 141; (4) that Defendants "discriminated against Sibedu because of his race and national origin and allowed [Plaintiffs] to be subjected to retaliation, scorn, and ridiculed [sic] by their fellow employees and supervisors" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). *see id.* at ¶ 143; (5) that Defendants violated the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1, *et seq.*; (6) that Defendants violated the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-3, *et seq.* ("NJLAD") by subjecting Plaintiffs "to disability, race, and national origin discrimination and retaliation," *id.* at ¶ 149; and (7) that Defendants violated Rich's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") "when they discriminated against her because of her disabilities and denied her reasonable accommodation."  *Id.* at ¶ 152.

## II.      Standard of Review

### A.      Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  An assertion of Eleventh Amendment immunity is a challenge to a district court's subject matter jurisdiction.  *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)).  When jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff  bears the burden of persuading the court that

subject matter jurisdiction exists.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

In evaluating a Rule 12(b)(1) motion to dismiss, the court must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact, apart from any pleadings.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In cases like this, where Defendants present a facial challenge to the Court's subject matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### B.      Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. 678–79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.   Discussion

### A.      Fourteenth Amendment Claim

Defendants move to dismiss Plaintiffs' Fourteenth Amendment claim, arguing that Plaintiffs cannot bring a direct cause of action under the Constitution. The Court agrees. It is well-established that 42 U.S.C. § 1983 provides the appropriate cause of action for all "citizens injured by an abridgement of those rights" guaranteed by the Fourteenth Amendment. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 611 (2008). In other words, a party may not assert claims for relief under the United States Constitution directly, but must use the remedies afforded under Section 1983. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906–07 (3d

Cir. 1997) ("By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."); *see also McGowan v. New Jersey*, Civil Action No. 08-5841(FLW), 2009 U.S. Dist. LEXIS 50463, at *21 (D.N.J. June 16, 2009) ("A claim that a party's Constitutional rights have been violated, however, must be pled under the statutory mechanism for such claims, 42 U.S.C. § 1983.").  Accordingly, the Court must dismiss Count I of Plaintiffs' Amended Complaint, and will instead analyze Plaintiffs' claim for deprivation of rights under the Equal Protection Clause of the Fourteenth Amendment as part of their Section 1983 claim.

### B.     42 U.S.C. § 1981 Claim

Next, Defendants argue that Plaintiffs' claim under Section 1981 must be dismissed because "the Third Circuit has determined that there is no private cause of action under § 1981." Defs.' Br. at 14 (citing *McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009). Defendants are correct.  Section 1981 does not provide a cause of action against state actors; rather, Section 1981 claims against state actors must be brought under 42 U.S.C. § 1983.  *See McGovern*, 554 F.3d at 121("[W]e hold that the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.") (quotation and citation omitted).   Here, as in *McGovern*, Plaintiffs' claims are premised solely on Section 1981, and have not been asserted through Section 1983. Consequently, as the *McGovern* Court made clear, Plaintiffs have failed to state a viable cause of action, as the Plaintiffs' exclusive remedy is through Section 1983.  *See id.* at 121–22. Accordingly, Plaintiffs' separate claim pursuant to Section 1981 must be dismissed.[3]   *See Clark v. Bd. of Educ.*, Civil Action No. 06-2736 (FLW), 2009 U.S. Dist. LEXIS 46948, at *21 n.13

---

[3] In Plaintiffs' Opposition Brief, they appear to assert that they are bringing their § 1981 claims through § 1983. Such a claim, however, is missing in the actual Amended Complaint.  *See* Am. Compl. Count II.  If Plaintiffs wish to bring their § 1981 claim through § 1983, they may amend their Amended Complaint to indicate such.

(D.N.J. June 4, 2009) (dismissing claim under Section 1981 against municipality and municipal employee).

### C.    Sovereign Immunity

#### 1.    The State Defendants

Next, the State of New Jersey and the DCF (collectively, the "State Defendants") claim that, pursuant to the Eleventh Amendment, they are immune from suit under Section 1983, the ADA, and the LAD.   The Eleventh Amendment provides:  "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  As developed, the Eleventh Amendment affords states and state agencies immunity from suits brought by citizens in federal court. *See MCI Telecom. Corp. v. Bell Atl.-Pa.,* 271 F.3d 491, 503 (3d Cir. 2001); *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies regardless of whether legal or equitable relief is sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *see also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought . . . .").

As mentioned, arms of the state—including agencies, departments, and officials—are entitled to the protections of Eleventh Amendment immunity from suit when the state is the real party in interest. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d. Cir. 2002); *see also Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001).  Courts in this distract have long held that, as a matter of law, DCF is an arm of the state for sovereign immunity purposes. *See Mammaro v. N.J. Div. of Child Permanency & Prot*., Civ. Action No.

13-6483 (FLW)(DEA), 2015 U.S. Dist. LEXIS 5321, at *17 n.9 (D.N.J. Jan. 15, 2015); *Newson v. Dep't of Children & Families Div. of Child Prot. & Permanency*, Civ. No. 14-5708, 2014 U.S. Dist. LEXIS 143007, at *8 (D.N.J. Oct. 8, 2014); *Sweet-Springs v. Dep't of Children & Families*, Civil No. 12-706(FLW), 2013 U.S. Dist. LEXIS 84620, at *17–18 (D.N.J. June 17, 2013); *Pena v. Div. of Child & Family Servs.*, Civil No. 08-1168, 2010 U.S. Dist. LEXIS 107755, at *12–13 (D.N.J. Oct. 8, 2010) (citing *Simmerman v. Corino,* 804 F. Supp. 644, 650 (D.N.J. 1992); *Caesar v. Megamillion Biggame Lottery*, Civil Docket No. 05-2986, 2005 U.S. Dist. LEXIS 27822, *4 n.3 (D.N.J. Nov. 9, 2005)); *see also Howard v. N.J. Div. of Youth & Family Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010) (holding that claims against DYFS, which is overseen by DCF, is immune from suit under the Eleventh Amendment).  Plaintiffs have offered no arguments to the contrary.  Accordingly, because the state is the real party in interest, DCF, like the State of New Jersey itself, is immunized from liability arising out of a suit against it in federal court.

There are three "narrowly circumscribed" exceptions that have been established to limit the breadth of the Eleventh Amendment: (1) congressional abrogation; (2) waiver by the state; and (3) suits against individual state officers for prospective injunctive and declaratory relief. *MCI*, 271 F.3d at 503.  Plaintiffs have not argued that any of these "narrowly circumscribed" exceptions to sovereign immunity apply to either the State of New Jersey or DCF, nor could they.  It is well-established that Congress has not abrogated—and New Jersey has not waived— the state's sovereign immunity with respect to § 1983 claims.[4]  *Quern v. Jordan*, 440 U.S. 332, 338 (1979); *Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008) (citing *Ritchie v.*

---

[4] In addition, it is axiomatic that states and state agencies "are not 'persons' within the meaning of § 1983 and, therefore, cannot be among those held liable for violations of the civil rights statute." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996); *see also Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("[A]n entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989)).  Accordingly, none of the State Defendants here can be considered a "person" amenable to suit under § 1983.

*Cahall*, 386 F. Supp. 1207, 1209–10 (D.N.J. 1974) (holding that State of New Jersey did not waive its sovereign immunity for purposes of lawsuits filed in federal court when it enacted the Tort Claims Act)); *see also Hurst v. City of Rehoboth Beach*, 288 F. App'x 20, 24–25 (3d Cir. 2008) (citing *Pennhurst*, 465 U.S. at 98; *Edelman*, 415 U.S. at 663; *Quern*, 440 U.S. at 345).

Likewise, this Court has not found, nor have Plaintiffs pointed to, any act of congressional abrogation of the NJLAD.  A review of the statute reveals that "[t]he State [of New Jersey] has not explicitly waived Eleventh Amendment immunity for claims brought in federal court under the NJLAD."  *Bennett v. City of Atl. City*, 288 F. Supp. 2d 675, 683 (D.N.J. 2003) (citing *Rudolph v. Adamar of N.J., Inc.*, 153 F. Supp. 2d 528, 540-44 (D.N.J. 2001)).  Indeed, while the NJLAD identifies the State and its alter egos as potential defendants in their capacity as an "employer," *see* N.J. Stat. Ann. § 10:5-5(e), the statute only authorizes the initiation of suits under the NJLAD "in Superior Court."  *Id.* § 10:5-13.  Accordingly, because waiver only exists "where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction," *Edelman*, 415 U.S. at 673 (internal quotation marks omitted), the Court finds that the State of New Jersey retains its Eleventh Amendment immunity.  *See Garcia v. Richard Stockton College*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002) ("New Jersey has not stated 'by the most express language' that it is open to private suits under the NJLAD in federal court."); *see also Sweet-Springs*, 2013 U.S. Dist. LEXIS 84620, at *19.  Consequently, because "a plaintiff may not sue the State of New Jersey, or its alter egos, under the NJLAD in federal court," this Court lacks subject matter jurisdiction over Plaintiffs' NJLAD claim against the State Defendants.  *Garcia*, 210 F. Supp. 2d at 550; *see also Hughes v. New Jersey*, Civ. No. 11-01442, 2012 U.S. Dist. LEXIS 30607, at *8–9 (D.N.J. Mar. 6, 2012).

13

Finally, the State Defendants are also immune from Plaintiff Rich's claims under the ADA.  While Rich does not precisely specify what provision of the ADA she is bringing her claim under, it appears that Plaintiff Rich's cause of action arises under Title I of the ADA, *see* Am. Compl. ¶ 152 (asserting that her rights under the ADA were violated when [Defendants] discriminated against her because of her disabilities and denied her reasonable accommodation"), as well as Title V of the ADA, *see id.* at ¶ 153 ("Defendants allowed Rich to be subject to retaliation, scorn, and ridicule by her fellow employees.").

"[Title I of] the ADA prohibits certain employers, including the States, from discriminating against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms conditions, and privileges of employment."  *Koslow v. Pennsylvania*, 302 F.3d 161, 177 (3d Cir. 2002) (quoting *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360–61 (2001)) (alterations in original).   Claims under Title I of the ADA brought to recover money damages from a state are barred by the Eleventh Amendment. *See Garrett*, 531 U.S. at 360; *see also Bowers v. NCAA*, 475 F.3d 524, 551 (3d Cir. 2007) ("[T]he Eleventh Amendment bars suits seeking money damages for state violations of Title I of the ADA.").

Likewise, the Court finds that Rich's claim for retaliation based on her disability under Title V of the ADA is also foreclosed by sovereign immunity.  While the Third Circuit has yet to rule on retaliation claims under Title V of the ADA, several courts in this District have found that Title V claims are also barred by sovereign immunity.  *See, e.g.*, W*ong v. NJ Dep't of Children & Families*, Civil Case No. 12-5915, 2013 U.S. Dist. LEXIS 141480, at *11 (D.N.J. Oct. 1, 2013); *Sweet-Springs*, 2013 U.S. Dist. LEXIS 84620, at *20 n.9; *Hughes*, 2012 U.S. Dist.

LEXIS 30607, at *11; *Foster v. N.J. DOT*, Civil Action No. 04-101, 2005 U.S. Dist. LEXIS

36439, at *16 n.7 (D.N.J. Dec. 27, 2005).  Courts have found the applicability of sovereign

immunity particularly persuasive "where, as here, the claims are predicated on alleged violations

of Title I."  *Demshki v. Monteith*, 255 F.3d 986, 988 (9th Cir. 2001); *see also Sweet-Springs*,

2013 U.S. Dist. LEXIS 84620, at *20 n.9.  The Court finds the reasoning of these cases

persuasive.  Accordingly, Plaintiff Rich's claims against the State Defendants under Title I and

Title V of the ADA are barred by sovereign immunity; consequently, this Court lacks subject

matter jurisdiction over the claims.

### 2.   Individual Defendants

Next, the Court turns to the whether Defendants Browne, Shrewing, and Bhatnagar

(collectively, the "Individual Defendants") also enjoy sovereign immunity.  As alter egos of the

state, suits against state officials in their official capacities for money damages are barred by the

Eleventh Amendment, absent specific abrogation of the state's immunity by Congress or consent

by the state.  *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Edelman*, 415 U.S. 641.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out a limited exception to

Eleventh Amendment sovereign immunity, in which "individual state officers can be sued in

their individual capacities for prospective injunctive and declaratory relief to end continuing or

ongoing violations of federal law."  *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 506

(3d Cir. 2001).  Plaintiffs assert that this exception applies here, because Plaintiffs are seeking

certain declaratory and injunctive relief.[5]  Specifically, in their Amended Complaint, Plaintiffs

seek (1) a declaratory judgment "that the conduct, practices, and acts complaint of herein are

discriminatory and illegal"; (2) a declaratory judgment that Rich "was discriminated against on

---

[5] The Third Circuit has held that "federal ADA claims for prospective injunctive relief against state officials are
authorized by the *Ex parte Young* doctrine."  *Koslow*, 302 F.3d at 179.

the grounds of disability by Defendants"; and (3) an injunction "preventing the Defendants from engaging in any and all forms of discrimination against Plaintiffs."  Am. Compl. at Claim for Relief (a)-(c).

"In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar, the Supreme Court has made it quite clear that 'a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Hess*, 297 F.3d at 324 (quotation omitted).  Here, Plaintiffs are, in sum, asking for a declaration from this Court that the conduct allegedly done by Defendants was discriminatory.  This relief, however, cannot appropriately be classified as prospective in its scope.  Plaintiffs also seek for this Court to enjoin Defendants from "engaging in any and all forms of discrimination against Plaintiffs," but Plaintiffs have all been terminated from their employment with DCF.  This relief, accordingly, does not relate to "continuing or ongoing violations of federal law," nor does it "govern[] an officer's future conduct."  *MCI*, 271 F.3d at 506.  Further, because the *Young* doctrine applies only "to violations of the United States Constitution and to violations of federal statutes," *MCI*, 271 F.3d at 506, the Court notes that Plaintiffs' claims under the NJLAD, even if they are for prospective injunctive relief, could not, by definition, fall within the scope of the *Young* doctrine.  *See Hess*, 297 F.3d at 325 ("Simply put, the Eleventh Amendment prohibits a federal court from considering a claim that a state official violated state law in carrying out his or her official responsibilities.").  Accordingly, Plaintiffs have failed to establish that the *Young* doctrine applies here, and the Court lacks subject matter jurisdiction over Plaintiffs' claims under § 1983, the ADA, and the NJLAD as against the Individual Defendants in their official capacity.[6]

---

[6] To the extent that Plaintiffs may wish to challenge the practices at the DCF, they no longer have standing to do so.

In sum, under Eleventh Amendment sovereign immunity analysis, Plaintiff's claims against the State Defendants and the Individual Defendants, sued in their official capacity, under the ADA, § 1983, and NJLAD must be dismissed. However, Plaintiff's claims against the Individual Defendants in their individual capacities may not be dismissed on the basis of sovereign immunity.[7]

### D.     Title VII Claims

In Count Four of their Amended Complaint, Plaintiffs allege that Defendants violated Title VII  when they "discriminated against Sibedu because of his race and national origin" and "allowed [P]laintiffs, Rich, Sibedu, and Farrior to be subjected to retaliation, scorn, and ridiculed [sic] by their fellow employees and supervisors."  Am. Compl. ¶ 143.  Defendants have moved to dismiss the claims as to Plaintiff Farrior, arguing that she did not receive a right-to-sue letter from the EEOC.  Defendants have also moved to dismiss Plaintiffs' Title VII claims against the individual Defendants, on the grounds that there is no individual liability under Title VII.  The Court turns to these arguments.

### 1.     Title VII Claims Against the Individual Defendants

The Court now turns to Plaintiffs' claims under Title VII against the Individual Defendants.  Third Circuit jurisprudence is clear that individual employees, including supervisors, are not subject to liability under Title VII.  *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to individual employees liable under Title VII."); *see also Tai Van Le v. Univ. of Pa.*, 321 F.3d 403, 409 (3d Cir. 2003) (noting that, where the defendant was the plaintiff's supervisor and not his employer, "liability cannot exist pursuant to Title VII"); *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002)

---

[7] In their Opposition brief, Plaintiffs make clear that they intend to bring their claims against the individual Defendants in their individual capacities, as well as their official capacities.

("[I]ndividual employees are not liable under Title VII.").  Consequently, to the extent that

Plaintiffs allege that the individual Defendants are liable in their individual capacities for

intentional discrimination and retaliation,[8] Plaintiffs' Title VII claim must be dismissed.

To the extent that Plaintiffs intend to bring their Title VII claims against the individual

Defendants in their official capacities, they must likewise be dismissed.  Courts in the Third

Circuit—and particularly in this District—have consistently held that it is redundant to name a

supervisor as a defendant in his official capacity when the employer is also named a defendant,

stressing that "Title VII provides for liability against employers, not supervisors."  *Stallone v.

Camden County Tech. Schs. Bd. of Educ.*, No. 12-CV-7356 RBK/JS, 2013 U.S. Dist. LEXIS

131082, at *21–22 (D.N.J. Sept. 13, 2013); *see also Gretzula v. Camden County Tech. Sch. Bd.

of Educ.*, 965 F. Supp. 2d 478, 486 (D.N.J. 2013) (dismissing claims against individual

defendants in their official capacity who are not employers, in part because "[n]aming a

supervisor as a defendant in his official capacity is redundant"); *Watson v. Dep't of Servs. for

Children*, 932 F. Supp. 2d 615, 621 (D. Del. 2013) (dismissing Title VII claims against DSCYF

employees in their official capacities because such claims "are actually claims against the

DSCYF"); *Galm v. Glouchestor Cnty.*, No. 06-CV-3333 NLH, 2007 U.S. Dist. LEXIS 61635, at

*7–9 (D.N.J. Aug. 22, 2007) (dismissing Title VII claims brought against supervisor in his

official capacity because "there is no purpose in keeping him in this lawsuit where the only relief

that could possibly be awarded to plaintiff will come from the employer, who is a defendant");

*Mitchell v. N.J. Lottery*, Civil Action No. 04-896 (MLC), 2006 U.S. Dist. LEXIS 32559, at *22

(D.N.J. May 15, 2006) ("Title VII does not permit official-capacity claims against non-employer

---

[8] In their Opposition brief, Plaintiffs reference a hostile work environment claim.  The Amended Complaint, however, contains no claim for hostile work environment under Title VII.  Indeed, it is unclear if Plaintiffs intend to bring a hostile work environment claim under Title VII, or if they plan to utilize the vehicle under NJLAD to present their claim, or if they wish to bring a hostile work environment claim under both statutes.  If Plaintiffs intend to bring such a hostile work environment claim, they have leave to file a Second Amended Complaint in which they make that intention—and the basis for the claim—clear.

individuals."); *Foxworth v. Pa. State Police*, Civil Action No. 03-CV-6795, 2005 U.S. Dist. LEXIS 6169, at *13 (E.D. Pa. Apr. 11, 2005) ("Because the only proper defendant in a Title VII case is the 'employer,' pursuing such claims against individuals in their official capacities would be redundant."), *aff'd,* 228 Fed. Appx. 151 (3d. Cir. 2007); *Schanzer v. Rutgers Univ.*, 934 F. Supp. 669, 678 n.12 (D.N.J. 1996) (finding "no basis for this distinction between 'official' and 'individual' suits" the statutory language because "[i]f the defendant is not plaintiff's employer, . . . it is irrelevant whether that person was acting in an official or individual capacity, for a Title VII suit may not be properly maintained against the individual").

Recently, this Court found this reasoning persuasive, holding that "official capacity suits against individual supervisory employees [are] barred under Title VII." *Simon v. Shore Cab, LLC*, Civ. Action No. 13-6290 (FLW)(LHG), 2014 U.S. Dist. LEXIS 83435, at *16–17 (D.N.J. June 19, 2014).  Plaintiffs have presented no reason for this Court to depart from its own precedent, nor do the circumstances of this case demand any.  Not only would the naming of the Individual Defendants in their official capacity create a redundancy, but Plaintiffs have named their actual "employer" as a defendant, thereby preventing any possible prejudice by the Individual Defendants.  In sum, Title VII provides recourse for a plaintiff against employers, not individual employees; accordingly, Plaintiffs' claims against the Individual Defendants are dismissed with prejudice.

2.    <u>Farrior's Right-to-Sue Letter</u>

Under Title VII, a complainant is required to file a charge of discrimination within 180 days of the date of the alleged discrimination.  *See* 42 U.S.C. 2000e-5(e)(1).  If a complainant has filed a charge of discrimination with a state agency first, his or her deadline for filing a charge with the EEOC is extended to 300 days.  *See id.*  Once the EEOC decides not to pursue

claims, it has an obligation to notify each affected plaintiff.  *See id.* § 2000e-f(f)(1).  Generally, this is done through the issuance of "a 'right to sue' letter, in which the agency states that it sees no reason to take action."  *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984).  "The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim under Title VII."  *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).  If no right-to-sue letter is received, a complainant may not initiate a Title VII suit.  *See id.*  Once a plaintiff receives notice of the EEOC's decision not to pursue the administrative charge, than the plaintiff has ninety days to bring a Title VII suit.  *See* 42 U.S.C. § 2000e-5(f)(1).  "The on-set of the 90-day period is generally considered to be the date on which the complainant receives the right-to-sue letter."  *Burgh*, 251 F.3d at 470 (citing *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999); *Mosel v. Hills Dept. Store, Inc.*, 789 F.2d 251, 252 (3d Cir. 1986) (per curiam)); *see also Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) ("Section 2000e-5(f)(1) requires that claims brought under Title VII be filed within ninety days of the claimant's receipt of the EEOC right to sue letter.").  A right-to-sue letter is considered to be received when it is delivered to a claimant's residence or post office box, not when the claimant has actual physical possession of the letter.  *See Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 115 n.15 (3d Cir. 2003).

In their Amended Complaint, Plaintiffs allege that "Farrior filed a complaint with the EEOC but the complaint was not docketed because the EEOC concluded that the complaint was filed more than three hundred days after the acts complaint of occurred."  Am. Compl. ¶ 12.  Defendants argue that this admitted failure to timely file with the EEOC by Farrior bars her Title VII claim, as the period for filing an administrative complaint is treated as a statute of limitations.  *See Zipes v. Trans World Airways, Inc.*, 455 U.S. 385, 393 (1982) (explaining that

filing a timely administrative charge with the EEOC is akin to requirements such as a statute of limitations).  The Amended Complaint lacks any allegations that Farrior received a right-to-sue letter from the EEOC—another statutory requirement under Title VII.  As discussed *supra*, Plaintiffs have submitted a copy of a right-to-sue letter sent to Farrior by the EEOC.  *See* Affirmation of Albert Van-Lare ("Van-Lar Aff.") Ex. 1 (hereinafter the "Right-to-Sue Letter"). The Court is baffled as to why Plaintiffs alleged that Farrior's administrative complaint was not docketed when the EEOC appears to have sent Farrior a right-to-sue letter.  It is particularly hard to reconcile the two where the Right-to-Sue Letter does not indicate that the EEOC was closing its file based upon a charge of not being timely filed; rather, the Right-to-Sue Letter makes no mention of the complaint being untimely, but rather states that the EEOC was closing its file on Farrior's charge because "the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  *See* Right-to-Sue Letter.  Regardless, when confronted with the actual proof of the Right-to-Sue Letter issued to Farrior, which does not indicate that Farrior filed her administrative complaint out of time, the Court cannot, in good faith, dismiss Farrior's Title VII claims based on the alleged failure to timely file an administrative complaint—despite the Amended Complaint alleging as much.

However, there is a 90-day period for filing a Title VII claim after receiving a right-to-sue letter that is treated as a statute of limitations.  *See Dicroce v. Norton*, 218 F. App'x 171, 173 (3d Cir. 2007).  This 90-day period is strictly construed and, "in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." *Burgh*, 251 F.3d at 470 (citing *Figueroa v. Buccaneer Hotel*, 188 F.3d 172, 176 (3d Cir. 1999). Here, the Right-to-Sue Letter was mailed on December 31, 2013.  *See* Right-to-Sue Letter. Nowhere does Farrior allege when she received the letter.  "[W]here the actual date of receipt is

unknown, courts will presume receipt took place three days after the EEOC mailed it." *Edwards v. Bay State Milling Co.*, 519 F. App'x 746, 748 (3d Cir. 2013); *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) ("[I]n the absence of other evidence, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it.") (citing Fed. R. Civ. P. 6(e), now codified as Rule 6(d)); *see also Baldwin County Welcome Center v. Brown*, 466 US 147, 148 n.1 (1984) (per curiam) (applying Rule 6(e) presumption to receipt of an EEOC right-to-sue letter).  Under this three-day rule, Farrior is presumed to have received the right-to-sue letter on or before January 3, 2014.  Farrior's ninety days, therefore, ran on April 3, 2014.  This action was not commenced until April 4, 2014.  *See Edwards*, 519 Fed. App'x at 748–49 (explaining that, where the EEOC right-to-sue letter was mailed on December 31, 2009, plaintiff had ninety days from January 3, 2010 to file its claim, or until April 3, 2010); *Seitzinger*, 165 F.3d at 239 (finding that claim was untimely when filed after ninety days from the date of the presumed receipt of the right-to-sue letter); *see also Payan v. Aramark Mgmt. Servs. L.P.*, 495 F.3d 1119, 1125 (9th Cir. 2007) (affirming dismissal of Title VII claims filed on January 2, 2004 because the EEOC issued the right-to-sue letter on September 26, 2003 and plaintiff was presumed to have received the letter on or before September 29, 20013, meaning the 90-day period ran on December 28, 2003).  Consequently, the Court must dismiss Plaintiff Farrior's Title VII claim because it is time barred.  *See McGowan v. New Jersey*, Civil Action No. 08-5841(FLW), 2009 U.S. Dist. LEXIS 50463, at *12–13 (D.N.J. June 16, 2009).  Because neither party has addressed this issue, Plaintiffs may have evidence that shows Farrior received her right-to-sue letter after January 3, 2014, thereby making her claim timely.  Therefore, the Court gives Plaintiffs leave to amend the Amended Complaint in order to establish the timeliness of Farrior's Title VII claim as to the State Defendants.  If no further amendment alleges a date of

actual receipt later than January 3, 2014, then Farrior's Title VII claim will be dismissed against the State Defendants.

### E.    CEPA Claims

Defendants move to dismissing Counts One, Two, Three, Four, Six, and Seven of Plaintiffs' Amended Complaint, arguing that Plaintiff waived the right to bring such claims when he filed substantially similar claims under the New Jersey Conscientious Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1, *et seq.*  Pursuant to CEPA's waiver provision:

> [T]he institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J. Stat. Ann. § 34:19-8.  In their Opposition brief, Plaintiffs have withdrawn their CEPA claims against Defendants with prejudice.  *See* Pls.' Opp. Br. at 15.  Accordingly, Count Five of the Amended Complaint is dismissed with prejudice.

### F.    Rich's Claims under § 1983 and Title VII

Next, Defendants argue that Rich's claims under § 1983 and Title VII must be dismissed because she is white.  Plaintiffs' claim under § 1983 is premised upon Defendants "discriminat[ing] against Plaintiffs because of their race as African-Americans."  Am. Compl. ¶ 141.  On the face of this allegation, it does not appear that Plaintiffs intended to bring a § 1983 claim on Plaintiff Rich's behalf, as she—a white female—could not have been discriminated against on the basis alleged in the Amended Complaint.  Accordingly, to the extent that Plaintiffs are attempting to bring a claim against the Defendants under § 1983 on Plaintiff Rich's behalf "because of [her] race as [an] African-American[]," such a claim is dismissed.

Likewise, Plaintiffs have alleged that Defendants have violated Title VII by discriminating "against Sibedu because of his race and national origin," and by retaliating against

all three Plaintiffs.  *See* Am. Compl. ¶ 143.  As Plaintiffs point out in their opposition, a plaintiff

may appropriately bring a Title VII claim on the basis of reverse discrimination.  *See Iadimarco*

*v. Runyon*, 190 F.3d 151 (3d Cir. 1999).  Here, however, Plaintiffs have not alleged that Plaintiff

Rich is bringing such a claim.[9]  Rather, Plaintiffs have only asserted that Plaintiff Rich's rights

under Title VII were violated when Defendants retaliated against her.  Plaintiff Rich may

appropriately bring such a claim under Title VII:

> While white workers may be unable to successfully complain under the anti-
> discrimination provision of Title VII solely because they are required to work in
> an environment hostile to blacks, if they became the victims of 'materially
> adverse actions' because they reasonably perceived that environment as violative
> of Title VII and objected, they have a valid retaliation claim.

*Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).  Therefore, because Plaintiffs

have not alleged a reverse discrimination claim and because her race is not a "threshold issue" to

be addressed for her retaliation claim under Title VII, Defendants' motion to dismiss Plaintiff

Rich's Title VII claims on the basis of her race is denied.

### G.    Qualified Immunity

Next, the Individual Defendants claim they are entitled to qualified immunity. State

actors in their individual capacity are entitled to qualified immunity as an affirmative defense

against Section 1983 claims when "their actions could reasonably have been thought consistent

with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638

(1987).  The Supreme Court has established a two prong test for determining whether a state

actor is entitled to a defense of qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Under this test, a court must analyze "(1) whether the facts alleged by the plaintiff show the

---

[9] Nor does it seem that Plaintiffs intend to bring such a claim based upon the allegations in the Amended Complaint. There are, quite simply, no allegations "that [Defendants] treated [Plaintiff Rich] less favorably than others because of [her] race, color, religion, sex, or national origin."  *Iadimarco*, 109 F.3d at 163.  (internal quotation marks omitted).

violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Saucier*, 533 U.S. at 201). Courts are not required to analyze the first prong of this test before proceeding to the second prong. *See Pearson v. Callahan*, 555 U.S. 223, 240 (2009).

Here, Defendants define Plaintiffs' § 1983 claim as arising under the Due Process Clause of the Fourteenth Amendment. Specifically, Defendants assert that "Plaintiffs' § 1983 claim against the Individual Defendants is that these State officials, acting under the color of law, denied the employee due process in the course of each of their terminations." Defs.' Reply Br. at 4. This argument, however, was raised by Defendants for the first time in their reply brief. "A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.3 (D.N.J. 1999) (citing *International Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) (refusing to consider an issue raised for the first time in a reply brief)). Consideration of this argument by the Court would clearly prejudice Plaintiffs, who have not been given an opportunity to respond to the assertion of qualified immunity by Defendants. *See United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (declining to consider arguments raised in a reply brief to avoid prejudice to appellees); *Stern v. Halligan*, 158 F.3d 729, 731 n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief."). This is particularly significant here, where the Amended Complaint supports Section 1983 claims brought against the Individual Defendants on grounds other than a violation of Plaintiffs' procedural due process rights.[10] Therefore, the Court denies, without prejudice, Defendants' motion to dismiss Plaintiffs' § 1983 claims against the Individual Defendants on qualified immunity grounds.

---

[10] On a more fundamental level, while Defendants have framed Plaintiffs' Section 1983 claim as arising under the Due Process Clause, it does not appear that Plaintiffs are attempting to bring a claim for a violation of their

H.      **ADA Claim**

Finally, Defendants move to dismiss Plaintiff Rich's claims under the ADA against the

individual Defendants.   Defendants have raised this argument, like their qualified immunity

defense, for the first time in their reply brief.   As discussed, courts generally do not consider an

argument raised for the first time in a reply brief because of the potential for prejudice to the

non-moving party.  Here, however, the Court will consider this argument because Plaintiffs'

inability to respond to this argument is of little consequence because the Court holds that, as a

matter of law, individuals may not be held liable under either Title I or V of the ADA.

While the Third Circuit has not directly ruled on whether individual liability exists under

Title I or Title V for discrimination claims arising out of an employment relationship, it has

suggested in dicta that such liability is not available.  *See Koslow*, 302 F.3d at 178 (explaining

that "there appears to be no individual liability for damages under Title I of the ADA") (citing

*EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 n.4 (7th Cir. 1995)); *Emerson v. Thiel*

*College*, 296 F.3d 184, 189 (3d Cir. 2002) (suggesting in dicta that "individuals are not liable

under Titles I and II of the ADA") (citing *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98,

107 (2d Cir. 2001) (holding Title II does not allow suits against individuals)); *see also Boggi v.*

*Medical Review & Accrediting Council*, 415 F. App'x 411, 414-415 (3d Cir. 2011) (affirming

dismissal of ADA claims against non-entity defendants sued in their individual capacities) (citing

*Emerson*, 296 F.3d at 189); N'Jai v. Floyd, 386 F. App'x 141, 144 (3d Cir. 2010) (holding that

the individual defendants cannot be liable under the ADA).

The Third Circuit has yet to supply any guidance regarding the existence of individual

liability under Title V of the ADA; a number of other courts, including courts within this Circuit,

---

procedural due process rights; there are, quite simply, no allegations indicating that Plaintiffs intend to do so.  In
contrast, it is quite clear that Plaintiffs are attempting to bring a Section 1983 claim for violating the Equal
Protection Clause of the Fourteenth Amendment.

have held that there can be no individual liability under Title V when the claim is based on retaliation for the exercise of rights under Title I.  *See Albra v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007); *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999); *Baird v. Rose*, 192 F.3d 462, 471–72 (4th Cir. 1999); *Hughes*, 2012 U.S. Dist. LEXIS 30607, at *11–12 ("Defendant Van Pelt cannot be held, in her individual capacity, liable under Title V of the ADA for any activity arising out of an employment relationship."); *Shine v. TD Bank Fin. Group*, Civil No. 09-4377 (RBK/KMW), 2010 U.S. Dist. LEXIS 69529, at *18–21 (D.N.J. July 12, 2010) ("[E]mployment retaliation claims under Title V [of the ADA] cannot be maintained against an individual."); *Smiley v. Chrysler*, 538 F. Supp. 2d 711, 719 (D. Del. 2008); *P.N. v. Greco*, 282 F. Supp. 2d 221, 243 (D.N.J. 2003); ("Plaintiffs' ADA retaliation claim against Greco is not viable because the ADA does not by itself provide for individual liability for retaliation."); *Douris v. Schweiker*, 229 F. Supp. 2d 391, 397 (E.D. Pa. 2002), *aff'd*, 100 F. App'x 126 (3d Cir. 2004); *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 552 (D.N.J. 2000).

Generally, these courts have reasoned that ADA claims arising under Title I and Title V, for a retaliation claim arising out of an employment relationship, should be interpreted in accordance with Title VII of the Civil Rights Act, which prohibits individual liability.  *See, e.g.*, *Santiago*, 107 F. Supp. 2d at 552 ("In light of the Third Circuit's decision in *Sheridan* that Title VII does not support individual liability and that the ADA specifically incorporates the remedies available under Title VII, as well as the great weight of authority of the District Courts in this Circuit, I hold that the ADA anti-retaliation provision does not provide a remedy against individual defendants."); *DeJoy v. Comcast Cable Communs.*, 941 F. Supp. 468, 475 (D.N.J. 1996) (comparing the "mirror" statutory definitions and purposes of Title VII and the ADA to conclude that the ADA, like Title VII, does not allow for individual liability); *see also Datto v.*

*Harrison*, 664 F. Supp. 2d 472, 491 (E.D. Pa. 2009) (explaining that it is appropriate for courts to consider Title VII's prohibition on individual liability when analyzing ADA retaliation claims "because, under § 12203(c), retaliation claims in that context apply the remedies of Title I of the ADA, which incorporates the remedies of Title VII").  In light of the well-reasoned logic of these decisions, as well as the Third Circuit's dicta on individual liability under the ADA, the Court is persuaded that Plaintiff Rich's claims under Title I and Title V may not be maintained against the Individual Defendants.  Accordingly, these claims are dismissed with prejudice.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion is granted in part and denied in part. Counts One, Two, Five, and Seven of the Amended Complaint are dismissed in their entirety. Count Three of the Amended Complaint, alleging violations of 42 U.S.C. § 1983, is dismissed as it relates to the State Defendants and the Individual Defendants in their official capacities only. Count Four of the Amended Complaint, alleging violations of Title VII, is dismissed as to the Individual Defendants.  Plaintiff Farrior's Title VII claim is dismissed, with leave to amend to establish the timeliness of her claim as to the State Defendants.  Furthermore, Defendants' motion to dismiss Plaintiff Rich's Title VII retaliation claim is denied.  Finally, Count Six of the Amended Complaint, alleging violations of the NJLAD, is dismissed as it relates to the State Defendants and the Individual Defendants in their official capacities only.  Plaintiffs may file a Second Amended Complaint within thirty days of the date of the entry of the accompanying Order to correct the deficiencies noted in this Opinion, to the extent possible.  An appropriate Order accompanies this Opinion.

/s/ Freda L. Wolfson_____
FREDA L. WOLFSON, U.S.D.J.

Dated: May 12, 2015