**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
|                                    |
| CAROLINE RICH,                     |
|                                    | :     Civil Action No. 14-2075-BRM-DEA
|        Plaintiff, |
|                                    |
|       v.  |
|                                    |
| STATE OF NEW JERSEY,               |
| NEW JERSEY DIVISION OF             | :     **OPINION**
| CHILDREN & FAMILIES,               |
| ILA BHATNAGAR, and                 |
| MARY BROWNE,                       |
|                                    |
|        Defendants. |
_____

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants State of New Jersey (the "State"), New Jersey Division of Children and Families ("DCF") (together with the State, the "State Defendants"), Ila Bhatnagar ("Bhatnagar"), and Mary Browne's ("Browne") (together with Bhatnagar, the "Individual Defendants") (collectively, "Defendants") Motion for Reconsideration of the Court's September 26, 2017 Order and Opinion or, in the alternative, for Summary Judgment against Plaintiff Caroline Rich ("Rich"). (ECF No. 80.) Rich opposes the Motion. (ECF No. 85.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendant's Motion for Reconsideration is **DENIED** and Defendant's alternative Motion for Summary Judgment is **GRANTED**.

## I.    BACKGROUND

The underlying facts are set forth at length in the Court's September 26, 2017 Opinion (ECF No. 72), from which Defendants seek reconsideration. In the interest of judicial economy, the Court refers the parties to that Opinion for a full recitation of the factual and procedural background of this dispute.

## II.    LEGAL STANDARDS

### A.    Motion for Reconsideration

While not expressly authorized by the Federal Rules of Civil Procedure, motions for reconsideration are proper pursuant to this District's Local Civil Rule 7.1(i). *See Dunn v. Reed Group, Inc.,* Civ. No. 08–1632, 2010 WL 174861, at *1 (D.N.J. Jan 13, 2010). The comments to that Rule make clear that "reconsideration is an extraordinary remedy that is granted 'very sparingly.'" L. Civ. R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, Civ. No. 03-3988, 2003 WL 22303078, *2 (D.N.J. Oct. 7, 2003)); *see also Langan Eng'g & Envtl. Servs., Inc. v. Greenwich Ins. Co.,* Civ. No. 07–2983, 2008 WL 4330048, at *1 (D.N.J. Sept. 17, 2008) (explaining that a motion for reconsideration under Rule 7.1(i) as "'an extremely limited procedural vehicle,' and requests pursuant to th[is] rule[ ] are to be granted 'sparingly'") (citation omitted); *Fellenz v. Lombard Investment Corp.*, 400 F. Supp. 2d 681, 683 (D.N.J. 2005).

A motion for reconsideration "may not be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). Instead, Local Civil Rule 7.1(i) directs a party seeking reconsideration to file a brief "setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has

overlooked." L. Civ. R. 7.1(i)[1]; *see also Bowers v. Nat'l Collegiate Athletic Ass'n,* 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term in the Rule.")

To prevail on a motion for reconsideration, the moving party must show at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros,* 176 F. 3d 669, 677 (3d Cir. 1999); *see also N. River Ins. Co. v. CIGNA Reinsurance, Co.*, 52 F. 3d 1194, 1218 (3d Cir. 1995). A court commits clear error of law "only if the record cannot support the findings that led to the ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, No. 09–4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (*citing United States v. Grape*, 549 F. 3d 591, 603–04 (3d Cir. 2008) "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.* Moreover, when the assertion is that the Court overlooked something, the Court must have overlooked some dispositive factual or legal matter that was presented to it. *See* L. Civ. R. 7.1(i).

In short, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6.* (quoting *P. Schoenfeld*, 161 F. Supp. 2d at 353); *see also United States v. Compaction Sys. Corp.,* 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.,* 680 F. Supp. 159, 163 (D.N.J. 1988); *Schiano v. MBNA Corp.,* Civ. No. 05–1771,

---

[1] Local Civil Rule 7.1(d) further provides that "[n]o reply papers shall be filed, unless permitted by the Court, relating to . . . [Motions for] Reconsideration under L. Civ. R. 7.1(i)."

2006 WL 3831225, at *2 (D.N.J. Dec. 28, 2006) ("Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, . . . and should be dealt with through the normal appellate process. . . .") (citations omitted).

### B.      Federal Rule of Civil Procedure 60

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence," *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005), as well as "inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1). "The remedy provided by Rule 60(b) is extraordinary, and special circumstances must justify granting relief under it." *Jones v. Citigroup, Inc.*, No. 14–6547, 2015 WL 3385938, at *3 (D.N.J. May 26, 2015) (quoting *Moolenaar v. Gov't of the Virgin Islands*, 822 F.3d 1342, 1346 (3d Cir. 1987). A Rule 60(b) motion "may not be used as a substitute for appeal, and . . . legal error, without more cannot justify granting a Rule 60(b) motion." *Holland v. Holt*, 409 F. App'x 494, 497 (3d Cir. 2010) (quoting *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir. 1988)). A motion under Rule 60(b) may not be granted where the moving party could have raised the same legal argument by means of a direct appeal. *Id.*

### C.      Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475

U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III.    DECISION

### A.    Motion for Reconsideration and Rule 60

In their Motion for Reconsideration, Defendants asks the Court to reconsider its decision partially denying its Motion for Summary Judgment and to correct its September 26, 2017 Opinion pursuant to Federal Rule of Civil Procedure 60. (ECF No. 80.) Specifically, Defendants argue the Court's September 26, 2017 Order and Opinion (ECF Nos. 72 and 73) "overlooked" the prior dismissal of Rich's claims for disability discrimination and hostile work environment in the Court's May 12, 2015 Order (ECF No. 25).[2] (ECF No. 80-1 at 5-12.)

---

[2] The Court notes Rich also argues Defendants Motion for Reconsideration is untimely. (ECF No. 85 at 4-5.) However, Defendants sought permission to file a summary judgment motion on Rich's disability and discrimination and hostile work environment claims before filing their Motion and the Court invited Defendants to file a Motion for Reconsideration. (ECF Nos. 78 and 79.)

On April 2, 2014, Plaintiffs Marie-Joe Farrior, and Okey Sibeu (collectively, "Plaintiffs") filed a complaint against the State, DCF, Browne, Shrewing, and Bhatnagar alleging seven causes of action: (1) violations of the 14th Amendment equal protection clause (Count One); (2) violations of 42 U.S.C. § 1981 (Count Two); (3) violations of 42 U.S.C. § 1983 (Count Three); (4) violations of Title VII for discriminating against them because of their "race and national origin and allowed them to be subjected to retaliation, scorn and ridiculed by their fellow employees" (Count Four); (5) violations of the Conscientious Employee Protection Act ("CEPA") (Count Five); (6) violations of the New Jersey Law Against Discrimination ("NJLAD") because Plaintiffs "were subjected to disability, race and national origin discrimination and retaliation" (Count Six); and (7) violations of the Americans with Disabilities Act ("ADA") (Count Seven). (Compl. (ECF No. 1).) On July 28, 2014, prior to serving the Complaint, Plaintiffs filed an Amended Complaint alleging the same causes of action and served Defendants with the Amended Complaint. (ECF Nos. 5, 6, 7, 8, 9.)

On October 5, 2014, Defendants filed a motion to dismiss the Amended Complaint in lieu of an answer. (ECF No. 17.) On May 12, 2015, Judge Freda L. Wolfson entered an Order granting in part and denying in part Defendants' motion to dismiss. (ECF Nos. 25, 26.) Specifically, in relevant part, the Order dismissed Counts One, Two, Five, and Seven of the Amended Complaint in their entirety; dismissed Count Three as it related to the State Defendants and the Individual Defendants in their official capacities; dismissed Count Four as to the Individual Defendants only; and dismissed Count Six as it related to the State Defendants and the Individual Defendants in their official capacities. (ECF No. 26.) The Court's Opinion further stated:

> In their Opposition brief, Plaintiffs reference a hostile work environment claim. The Amended Complaint however, contains no claim for *hostile work environment under Title VII*. Indeed, it is unclear if Plaintiffs intended to bring a hostile work environment

> under Title VII, *or if they plan to utilize the vehicle under NJLAD to present their claim*, or if they wish to bring a hostile work environment claim under both statutes. If Plaintiffs intend to bring such a hostile work environment claim, *they have leave to file a Second Amended Complaint in which they make that intention—and the basis for the claim—clear*.

(ECF No. 25 at 18 n.8 (emphasis added).)

On June 11, 2015, Plaintiffs filed a Second Amended Complaint alleging: (1) violations of the 14th Amendment (Count One); (2) violations of 42 U.S.C. § 1981 as to Farrior and Sibedu only (Count Two); (3) violations of 42 U.S.C. § 1983 by virtue of having violated § 1981 (Count Three); (4) violations of Title VII for discriminating against Farrior and Sibedu only (Count Four); (5) violations of Title VII against Plaintiffs when they retaliated against them for "activities and actions relating to complaints of race and national origin discrimination, and activities relating to cooperation with EEO investigations" and subjecting them to hostile work environments (Count Five); (6) violations of the NJLAD because Plaintiffs "were subjected to race discrimination, national origin discrimination, *hostile work environment,* and retaliation" and because "[t]he individual defendants engaged in discrimination against Plaintiff Rich *because of her disabilities* (Count Six); and (7) violations of the Americans with Disabilities Act ("ADA") (Count Seven). (ECF No. 27.)

On June 15, 2015, Defendants filed a letter claiming the Second Amended Complaint was not in compliance with the Court's Opinion and Order dated May 12, 2015. (ECF No. 28.) Specifically, Defendants contended there were three separate claims under 42 U.S.C. § 1983 against all Defendants when the Court stated it lacked subject matter jurisdiction as to these claims. (*Id.*) On June 30, 2015, the parties' issued a Stipulation, which was entered by the Court, maintaining: (1) Count Seven is dismissed from the Second Amended Complaint with prejudice; (2) Counts One, Two, and Three from the Second Amended Complaint are solely directed against

the Individual Defendants in their individual capacities; (3) Counts Four and Five from the Second Amended Complaint are solely directed against the State Defendants; (4) Count Six from the Second Amended Complaint is solely directed against the Individual Defendants in their individual capacities; and (6) defendant Shewring is dismissed with prejudice. (Parties Stipulation (ECF No. 33).)

On September 12, 2016, following a settlement conference, Plaintiffs Farrior and Sibedu settled with Defendants. (ECF No. 55 and ECF No. 71.) As a result, all of their claims against the defendants were dismissed. On January 13, 2017, Defendants filed a Motion for Summary Judgment. (ECF No. 60.) Rich opposed the Motion on February 7, 2017. (ECF No. 62.) In their briefs, the parties agreed only two counts—Count Five and Count Six—remained. (ECF No. 60-1 at 5 and ECF No. 62 at 3.) They further agreed Count Five was a Title VII claim solely against the State Defendants for retaliation. (ECF No. 60-1 at 5 and ECF No. 62 at 3.) However, they disagreed as to the parameters of Count Six. Defendants argued Count Six was limited to an NJLAD claim against the Individual Defendants in their individual capacities for retaliation (ECF No. 60-1 at 5),[3] while Rich argued Count Six contained NJLAD claims against the Individual Defendants in their individual capacities for retaliation, hostile work environment, and disability discrimination (ECF No. 62 at 3).

In its September 26, 2017 Opinion, the Court found Rich availed herself of the opportunity to re-plead her hostile work environment and disability discrimination under the NJLAD in her Second Amended Complaint in accordance with the Court's May 12, 2015 Order. (ECF No. 72 at 40.) However, the Court did not find Rich *successfully* or *sufficiently* pled such causes of action,

---

[3] Defendants argue "no disability claim under the [NJ]LAD was pled in Plaintiff's Second Amended Complaint." (ECF No. 60-1 at 5.)

as such question was not before the Court.[4] Rather, the Court found Count Six was "properly pled"—*i.e.,* raised—as permitted by the Court in its May 12, 2015 Order. Indeed, Count Six of Rich's Second Amended Complaint unambiguously stated:

> 158. The acts and conduct of the individual Defendants as stated above where Plaintiffs were subjected to race discrimination, national origin discrimination, *hostile work environment*, and retaliation constitution violations of the NJLAD.
>
> 159. The individual defendants engaged in *discrimination against Plaintiff Rich because of her disabilities*.

(ECF No. 27 ¶¶ 158-59 (emphasis added).) The Court found Rich permissibly availed herself of the opportunity to re-plead them and made no finding as to the sufficiency of the allegations, nor was it asked to.

Nevertheless, Defendants maintain the Court "overlooked" its May 12, 2015 Opinion and Order. The Court does not agree. The term "overlooked" in L. Civ. R. 7.1(i) "has been consistently interpreted as referring only to facts and legal arguments that might have reasonably resulted in a different conclusion had they been considered." *Summerfield v. Equifax*, 264 F.R.D. 133, 145

---

[4] Specifically, Defendants argued: (1) "PLAINTIFF CANNOT MAKE A PRIMA FACIE CASE FOR RETALIATION UNDER EITHER THE LAD OR TITLE VII BECAUSE SHE DID NOT ENGAGE IN ANY PROTECTED ACTIVITY AND HER ALLEGED PROTECTED ACTIVITY IS NOT CAUSALLY RELATED TO HER TERMINATION;" (2) "DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S RETALIATION CLAIM BECAUSE SHE CANNOT REFUTE DEFENDANTS' LEGITIMATE BUSINESS REASONS FOR TERMINATING HER;" (3) DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES BECAUSE THERE IS NO EVIDENCE OF ESPECIALLY EGREGIOUS CONDUCT AND ACTUAL PARTICIPATION OR WILLFUL INDIFFERENCE BY UPPER MANAGEMENT;" (4) "PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE PERC HAS EXCLUSIVE  AUTHORITY OVER MATTER WITHIN ITS JURISDICTION AND PERC'S DECISION COLLATERALLY ESTOPPS PLAINTIFF FROM BRINGING HER CLAIMS AGAIN IN SUPERIOR COURT; AND (5) "DEFENDANTS THE STATE OF NJ AND DCF ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THEIR COUNTERCLAIM BECAUSE OF A PRIOR JUDGMENT TIN THE SUPERIOR COURT." (ECF No 60-1 at i-ii.)

(D.N.J. 2009); *see also Schiano*, 2016 WL 5340508, at *1 ("[W]hen the assertion is that the Court overlooked something, the Court must have overlooked some dispositive factual or legal matter that was presented to it.") (citing L. Civ. R. 7.1(i)). The Court did not overlook its May 12, 2015 Order. In fact, Defendants raised the same argument in its Motion for Summary Judgment. *Hackensack Riverkeeper, Inc. v. Delaware Ostego Corp.*, 2007 WL 1749963, at *2 (D.N.J. June 15, 2007) (denying motion for reconsideration, noting "the Court [did not] overlook Plaintiffs' claims . . . and the relevant allegations in their Amended Complaint" because "those claims were presented in the Amended Complaint and argued in Plaintiffs' opposition to Defendants' motion to dismiss"). The Court specifically referenced the May 12, 2015 Order and the Second Amended Complaint in its September 26, 2017 Opinion when determining whether or not Rich re-pleaded claims for hostile work environment and disability discrimination in her Second Amended Complaint in violation of the NJLAD.  (ECF No. 72 at 16-18, 39-41).

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure. *Compaction Sys. Corp.*, 88 F. Supp. 2d at 345. Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), or as a motion for relief from judgment or order under Rule 60(b). *Id.* For the same reasons that Rich's Motion is denied on the merits under the Local Rule, it is denied under the Federal Rule of Civil Procedure 60. Defendants have failed to demonstrate the Court made a mistake in its September 26, 2017 Opinion. *Gonzalez*, 545 U.S. at 529. Accordingly, Defendant's Motion for Reconsideration or Rule 60 is **DENIED**.

## B. Motion for Summary Judgment

### i. Disability Discrimination Pursuant to NJLAD

Defendants argue Rich cannot make a *prima facie* case for disability discrimination under the NJLAD because she was "not able to perform the essential functions of her job when she was terminated and there is no causal connection between [her] disability and her ultimate termination." (ECF No. 80-1 at 12.) In the alternative, Defendants argue that even if Rich could meet all of the elements to establish a *prima facie* case of disability discrimination, "she cannot meet her burden to rebut the Defendants' legitimate rationale for referring her for Fitness for Duty ("FFD") Evaluations, issuing the disciplinary notices to her and ultimately terminating her." (*Id.* at 17.) Rich contends Defendants discriminated against her based on her disability by ordering three FFD evaluations in a short span of time and by refusing to process her requests for reasonable accommodation. (ECF No. 85 at 6-7.)

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5–4.1. The elements of an NJLAD claim vary based on the cause of action alleged. *Victor v. State*, 4 A. 3d 126, 141 (N.J. 2010) (listing the different *prima facie* elements for various NJLAD causes of action based on failure to hire, discriminatory discharge, retaliation, and hostile work environment).

The NJLAD prohibits employment discrimination on the basis of a disability. *Victor v. State*, 952 A.2d 493, 501 (N.J. Super. Ct. App. Div. 2008), *aff'd as modified*, 4 A. 3d 126 (N.J. 2010). In order to establish a *prima facie* case of disability discrimination under the NJLAD, a plaintiff must demonstrate:

> (1) plaintiff was handicapped or disabled within the meaning of the
> statue; (2) plaintiff was qualified to perform the essential functions
> of the position of employment, with or without accommodation; (3)
> plaintiff suffered an adverse employment action because of the
> handicap or disability; and (4) the employer sought another to
> perform the same work after plaintiff had been removed from the
> position.

*Id.* Courts have also "uniformly held that the [NJLAD] . . . requires an employer to reasonably accommodate an employee's handicap." *Tynan v. Vicinage 13 of Superior Court*, 798 A.2d 648, 654 (N.J. Super. Ct. App. Div. 2002).

"The failure to accommodate is one of two distinct categories of disability discrimination claims. . . ." *Tynan*, 798 A.2d at 655. The requirements for a failure to accommodate claim under the NJLAD have been interpreted in accordance with its federal counterpart, the Americans with Disabilities Act ("ADA"). *Id.*; *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 n.12 (3d Cir. 2006). To establish a *prima facie* case of failure to accommodate, a plaintiff must also *first* prove the following common factors:

> (1) plaintiff was handicapped or disabled within the meaning of the
> statue; (2) plaintiff was qualified to perform the essential functions
> of the position of employment, with or without accommodation; (3)
> plaintiff suffered an adverse employment action because of the
> handicap or disability; and (4) the employer sought another to
> perform the same work after plaintiff had been removed from the
> position.

*McQuillan v. Petco Animal Supplies Stores, Inc.*, No. 13-5773, 2014 WL 1669962, at *6 (D.N.J. Apr. 28, 2014); *Armstrong,* 438 F.3d at 246; *see Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 317–320 (3d Cir. 1999); *Linton v. L'Oreal USA*, No. 06-5080, 2009 WL 838766, at *3 (D.N.J. Mar. 27, 2009); *Tynan,* 798 A.2d at 657.

"Under the [NJ]LAD, an employer must reasonably accommodate an employee's disability and the related limitations of an employee, 'unless the employer can demonstrate that the

accommodation would impose and undue hardship on the operation of its business.'" *Hennessey v. Winslow Twp.*, 847 A.2d 1, 6 (N.J. Super. Ct. App. Div. 2004) (quoting *Tynan*, 798 A.2d at 654), *aff'd*, 875 A.2d 240 (N.J. 2005); *see also* N.J.A.C. 13:13–2.5(b). Although, an employer must reasonably accommodate an employee with a disability, that duty "extends only so far as necessary to allow a disabled employee to perform the essential functions of his job. It does not require acquiescence to the employee's every demand." *Tynan*, 798 A.2d at 655 (citations omitted). In reality, if the "employer reasonably determines that an employee because of handicap cannot presently perform the job even with an accommodation, then the employer need not attempt reasonable accommodation." *Id.*

New Jersey courts have adopted the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to NJLAD cases. *See, e.g., Victor*, 4 A.3d at 140–41 (observing that "employment discrimination claims [under the NJLAD] proceed in accordance with the McDonnell Douglas burden-shifting paradigm"); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002) (recognizing that New Jersey "courts have adopted the burden-shifting framework articulated in *McDonnell Douglas* . . . to prove disparate treatment under [NJ]LAD"). Therefore, if a plaintiff establishes a *prima facie* case, "the burden of going forward shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Viscik*, 800 A.2d at 833. If the employer is able to articulate such a reason, "the burden shifts back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination." *Id.*

Defendants take issue with elements two and three of the *prima facie* disability and reasonable accommodation test. They argue Rich "began exhibiting unusual and inappropriate behavior at work as early as 2011," prior to Defendants finding out she contained a disability.

(ECF No. 80-1 at 13.) They further claim Rich was unqualified to perform the essential functions of the position of employment, with or without accommodation, because Dr. Rapaport, in his last FFD examination, concluded Rich was not emotionally equipped to deal with children who were abused or neglected, found she was not fit for duty at the time, and found that her ability to be fit in the near future was poor. (*Id.* at 14-15.) Lastly, Defendants contend Rich fails to demonstrate they took any adverse action against her as a result of her disability. (*Id.* at 15.) Defendants argue "[t]he evidence demonstrates that Defendant Browne requested that [Rich] be sent for a FFD and her discipline was issued before Defendants became aware of [Rich's] disability." (*Id.*)

To the extent Rich argues Defendants refused to process her request for reasonable accommodations for the time she was on family medical leave for dizziness, excessive fatigue, high blood pressure, and headaches, the record demonstrates otherwise. In order to sufficiently state a claim for failure to accommodate under the NJLAD, in addition to establishing the *prima facie* elements, a plaintiff has to allege four elements: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated. *Armstrong*, 438 F.3d at 246; *see Taylor*, 184 F.3d at 317–320; *Tynan*, 798 A.2 d at 657.

On March 26, 2013, Rich was provided a letter from Gopi Mukkavilli, MD, stating she was being treated for chronic neck pain associated with nerve damage and Fibromyalgia. (ECF No. 60-20 at 5.) That letter also recommended she not perform field work to avoid additional injury. (*Id.*) On April 3, 2013, Defendants received a note that she should not do field work and that she should have a regular schedule for a year. (*Id.*) As such, Defendants searched for lateral positions to accommodate this request. (*Id.*) However, no matches fitting these restrictions were available. (*Id.*) In mid-April, Rich was informed there were demotional positions for which she

was qualified, but Rich did not want to take a pay cut. (*Id.*) On April 15, 2013, Defendants sent her a letter outlining her options: (1) providing an updated medical note clearing her for full duty or with restrictions that could be accommodated; (2) resignation; or (3) retirement. (*Id.*) In accordance with Defendants' options, Rich submitted another doctor's note which only prohibited her from lifting more than 50lbs, which Defendants approved. (*Id.*) In September 2013, Rich called Defendants stating she was willing to take a demotion and a pay cut, as her condition was getting worse, which was approved. (*Id.* at 4-5.) Indeed, the record demonstrates Defendants made a good faith effort to assist Rich with her disabilities. Defendants searched for lateral positions, accommodated her 50lb request, and accommodated Rich's request to take a demotion. Accordingly, Defendants' Motion for Summary Judgment as to Rich's failure to accommodate claim is **GRANTED**.

The Court also finds Rich's argument that Defendants issued three FFD evaluations in a short span of time as a form of disability discrimination unpersuasive. The Court has already found in its September 26, 2017 Opinion that "[Rich's] employment performance was decreasing and her employment was at risk prior to . . . November 16, 2011." (ECF No. 72 at 28.) There is no evidence in the record demonstrating Defendants were aware of Rich's mental disorders (bipolar and depression) or physical disabilities described above until 2013, almost two years after Rich's performance began to decline. (*Id.* at 34 and ECF No. 60-20 at 4-5.) Logically, Defendants could not have sent Rich to a FFD evaluation because of her disabilities if they only learned of them in 2013. As such, the Court finds Rich did not suffer an adverse employment action because of her disability, but instead because of her performance.

Moreover, Rich was not qualified to perform the essential functions of her position, with or without accommodations. Dr. Rapaport's last FFD examination concluded Rich was not

emotionally equipped to deal with children who were abused or neglected, found she was not fit for duty at the time, and that her ability to be fit in the near future was "guarded to poor." (ECF No. 60-32 at 462.) As such, Rich has failed to prove she was qualified to perform the essential functions of her position. Accordingly, Defendants' Motion for Summary Judgment as to Rich's NJLAD disability discrimination claim is **GRANTED**.

ii.     **Hostile Work Environment Pursuant to NJLAD**

Defendants argue Rich cannot establish her disability was the cause of the hostile work environment. (ECF No. 80-1 at 21.) Specifically, they state Rich "was sent for FFD examinations because of her erratic behavior at work, not because of her disability which was not known to the Individual Defendants until ***after*** the first FFD examination was conducted." (*Id.*) They further argue a reasonable person with a disability would not have viewed being sent to a FFD examination as making her workplace hostile and abusive. (*Id.* at 23.) Rich argues:

> There is no doubt that [she] can meet her burden to establish that she was subjected to hostile work environment. The denial of her requests for reasonable accommodation, subjecting her to surveillance and sharing her confidentiality medical with another agency not authorized to receive the confidential information, investigation on child abuse complaint that turned out to be unsubstantiated with the DCF refusing to issue a letter that the investigation was unsubstantiated even after demands from [Rich] spanning months are all instances of hostile work environment.

(ECF No. 85 at 8-9.)

To state a *prima facie* hostile work environment claim under the NJLAD, a plaintiff must show the complained of conduct: "(1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and the working environment is hostile or abusive." *Shepherd v. Hunterdon Dev. Ctr.*, 803 A.2d 445, 453 (N.J. 1993) (citing *Lehmann v. Toys 'R' Us,*

*Inc.*, 626 A.2d 445, 453 (N.J. 1993)). "A viable hostile environment claim stems from extremely insensitive conduct against the protected person so egregious that it alters the conditions of employment and destroys the person's equal opportunity in the workplace." *Jackson v. Gannett Co.*, No. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011).

As to the first element of the test, the *Lehmann* court stated:

> The first element of the test is discrete from the others. It simply requires that in order to state a claim under the [NJ]LAD, a plaintiff must show by a preponderance of the evidence that she suffered discrimination because of her [protected status]. Common sense dictates that there is no [NJ]LAD violation if the same conduct would have occurred regardless of the plaintiff's [protected status]. For example, if a supervisor is equally crude and vulgar to all employees, regardless of their [protected status], no basis exists for a [hostile work environment claim]. Although the supervisor may not be a nice person, he is not abusing a plaintiff because of her [protected status].

*Lehmann*, 626 A.2d at 454.

The New Jersey Supreme Court adopted the "severe or pervasive" test for NJLAD hostile work environment claims, as part of its comprehensive standard, which "conforms to the standard for establishing workplace racial or gender harassment under federal Title VII law." *Taylor v. Metzger*, 706 A.2d 685, 689 (N.J. 1998) (citations omitted). Therefore, in order for harassment to be cognizable, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *West v. Phila. Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1999) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

"Courts must consider the frequency or severity of the conduct, whether the conduct was physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interfered with plaintiff's work performance." *Jackson*, 2011 WL 3362154, at *5; *see Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008)). The focus must

be on the harassing conduct itself, "not its effect on the plaintiff or the work environment; that is because neither a plaintiff's subjective response to the harassment nor a defendant's subjective intent when perpetrating the harassment is controlling of whether an actionable hostile environment claim exists." *Cutler v. Dorn*, 955 A.2d 917, 924 (N.J. 2008) (internal citations omitted). Thus, plaintiffs must realize "not everything that makes an employee unhappy" forms the basis for an actionable hostile work environment claim. *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997) (citations omitted).

The first element "requires that in order to state a claim under the [NJ]LAD, a plaintiff must show by a preponderance of the evidence that she suffered discrimination because of her [protected status]." *Lehmann*, 626 A.2d at 454. "Common sense dictates that there is no [NJ]LAD violation if the same conduct would have occurred regardless of the plaintiff's [disability]." *Herman v. Coastal Corp.*, 791 A.2d 238, 249 (N.J. Super. Ct. App. Div. 2002). The record clearly demonstrates Rich was terminated because of her employment performance, not disability. As expressed above and in the Court's September 26, 2017 Opinion, "[Rich's] employment performance was decreasing and her employment was at risk prior to . . . November 16, 2011," which is prior to all of Rich's alleged hostile work environment allegations. (ECF No. 72 at 28.) Further, Defendants could not have sent Rich to a FFD evaluation because of her disabilities if they only learned of them in 2013. As such, Rich has failed to demonstrate she suffered discrimination because of her disabilities.

Moreover, Rich has failed to demonstrate her complained of conduct was severe or pervasive enough to sustain a hostile work environment claim. "In evaluating whether the harassment alleged was sufficiently severe or pervasive to alter the conditions of employment and to create a hostile or intimidating work environment for a female plaintiff, the finder of fact shall

consider the question from the perspective of a reasonable woman." *Lehmann*, 626 A.2d at 457-58. The standard is objective rather than subjective because "the purpose of the [NJ]LAD is to eliminate real discrimination and harassment." *Id.* at 458. "It would not serve the goals of gender equality to credit a perspective that was pretextual or wholly idiosyncratic." *Id.* As the *Lehmann* court stated:

> A hypersensitive employee might have an idiosyncratic response to conduct that is not, objectively viewed, harassing. Allegations of such non-harassing conduct do not state a claim, even if the idiosyncratic plaintiff perceives her workplace to be hostile, because the complained-of conduct, objectively viewed, is not harassment, and the workplace, objectively viewed, is not hostile.

*Id.*

Considering the totality of the circumstances, no reasonable female with a disability could find sending Rich to FFD examinations, subjecting her to surveillance and sharing her confidentiality medical information with another agency to be severe or pervasive enough. These actions were warranted based on Rich's work behavior. Because the hostile work environment test is conjunctive, the Court need not analyze the remainder of the elements. Accordingly, Defendants' Motion for Summary Judgment as to Rich's hostile work environment claim is **GRANTED**.

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' Motion for Reconsideration is **DENIED**. However, Defendants' alternative Motion for Summary Judgment is **GRANTED**. Because the parties agree disability discrimination and hostile work environment under the NJLAD were the only causes of action that remained in this case, judgment in favor of Defendants is **GRANTED** in its entirety. (*See* ECF Nos. 80, 85.)


Date: February 6, 2018                                           */s/ Brian R. Martinotti*_____
                                                                 **HON. BRIAN R. MARTINOTTI**
                                                                 **UNITED STATES DISTRICT JUDGE**